UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPHINE BOWIE

    Plaintiff,

*v*.                                                         Case No. 06-CV-14448

COMMISSIONER OF                          DISTRICT JUDGE THOMAS L. LUDINGTON
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability insurance benefits.  This matter is currently before the Court on cross-motions for summary judgment.  (Dkts. 11, 12.)

Plaintiff was 49 years of age at the time of the administrative hearing. She has a high school education and two years of vocational college education. (Tr. at 218, 219.) Plaintiff's relevant work history includes assembly work in the automotive industry. (Tr. at 77.)

Plaintiff filed the instant claim on March 29, 2000, alleging that she became unable to work on August 20, 1999. (Tr. at 59.) The claim was denied at the initial administrative stages. (Tr. at 41-47.) In denying Plaintiff's claim, the Defendant Commissioner considered ischemic heart disease and affective disorders as possible bases of disability. (Tr. at 41.)

On April 25, 2001, Plaintiff appeared before Administrative Law Judge ("ALJ") Anthony B. Roshak who considered the case *de novo*. In a decision dated July 13, 2001, the ALJ found that Plaintiff was not disabled. (Tr. at 30-36.) Plaintiff requested a review of this decision on July 31, 2001. (Tr. at 22.)

The ALJ's decision became the final decision of the Commissioner on August 7, 2006, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.)[1] On October 11, 2006, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.      Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*

---

[1]Noting that it was unable to locate Plaintiff's file, the Appeals Council on May 11, 2004, remanded the case to the ALJ to conduct a new *de novo* hearing. (Tr. at 18-19.) The order ended with the statement that "the Appeals Council regrets the delay involved." (*Id.*) In an order dated May 3, 2006, the Appeals Council vacated that action, explaining that, "[s]ubsequent to the remand, the missing recording and claims file were located." (Tr. at 15-16.)

*of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case *de novo* . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human*

*Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review).  Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility.  *Garner,* 745 F.2d at 387-88.

### C. Governing Law

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).  "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act."  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security.  The test is as follows:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

### D.     Administrative Record

Evidence contained in the administrative record and presented to the ALJ indicates that in early November 1997, Plaintiff underwent a cardiac catheterization procedure undertaken at St. Joseph Mercy Hospital performed by Dr. Mathew.  The doctor reported that Plaintiff's coronary arteries were within normal limits.  (Tr. at 129.)  The aortic cardiac valve showed some abnormalities and the doctor found an ejection fraction of approximately 60%.  (*Id.*)  An echocardiogram test performed by Dr. Mathew one week later indicated that the leaflets of the cardiac aortic valve were thickened.  The doctor also found stenosis[2] in the aorta blood vessel.  (Tr. at 131.)  The ventricles of the heart as well as the other cardiac chambers did not evidence abnormalities.  (Tr. at 131-32.)

In mid-July 1999, Plaintiff was admitted to the North Oakland medical center after suffering pain in the arms and chest while at work.  (Tr. at 134.)  Plaintiff was admitted under the care of Dr. Mathew who reported that electrocardiogram, enzyme tests and chest x-ray were normal.  (Tr. at 135.)  A Thallium exercise stress test was also negative for evidence of stress-induced cardiac ischemia.[3]  (Tr. at 139.)  Plaintiff was discharged three days after admission with instructions to follow up with Dr. Mathew.  (Tr. at 135.)

X-rays taken of Plaintiff's left knee at the request of Dr. Mathew in mid-November 1999 showed that the joint spaces were preserved and that there were minor degenerative changes and minimal bone spurs.  (Tr. at 162.)  In early March 2000, Plaintiff underwent a treadmill exercise

---

[2] Stenosis is defined as the "abnormal narrowing of a body passage, opening, canal, or duct.  It is usually due to an overgrowth or shrinkage of the tissue around it."  5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE S-290 (2005).

[3] Ischemia is defined as "a condition in which a part of the body suffers from a lack of blood, usually because of a contraction of the blood vessels, as in myocardial ischemia (caused by a narrowing of the coronary arteries)." 3 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE I-205 (2005).

stress test. (Tr. at 163.) Although a baseline electrocardiogram showed evidence of an old myocardial infarction, the test was negative for exercise-induced cardiac ischemia. (*Id.*) A stress echocardiogram taken in conjunction with this test was within normal limits. (Tr. at 171.) Doppler studies taken at the same time indicated the previously-described abnormalities of the aortic cardiac valve. (*Id.*)

In mid-April 2000, Dr. Mathew forwarded a report about Plaintiff to the Disability Determination Service. (Tr. at 173-76.) The doctor reported that Plaintiff suffered from aortic stenosis, atrial fibrillation,[4] hypertension and chest pain. (Tr. at 173.) Plaintiff's blood pressure measured 130/70, 170/100, 60/84. (*Id.*) The doctor reported that Plaintiff was experiencing shortness of breath[5] on moderate exertion and recounted prior incidents of chest pain. (Tr. at 174.) The doctor felt that Plaintiff should not undertake any lifting activities over her head or any lifting of items weighing more than 10 pounds. (Tr. at 175.)

In daily activity summaries completed in late April 2000 as part of her benefits application, Plaintiff reported that she prepared breakfast, lunch, and dinner at home for herself and her children. (Tr. at 85.) Plaintiff reported that she washed dishes and did the laundry on a daily basis. (Tr. at 86.) Plaintiff also stated that she shopped weekly for food and every two months bought clothing. She shopped at neighborhood stores within 2 to 3 miles of her home, sometimes driving herself, and sometimes riding with a friend. (*Id.*) Plaintiff reported that she read and worked on puzzles regularly (Tr. at 87), that she visited friends and family weekly, and regularly attended

---

[4]Atrial fibrillation is defined as "[a] type of heart fibrillation due to an abnormal spread of the contraction impulse through the tissue of the atrium or auricle. . . . [T]he rhythmical contractions of the atria are replaced by ineffective irregular twitchings. The heartbeat (contraction of ventricles) varies from 60 to 180 per minute and is irregular." 1 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE A-594 (2005).

[5]Dyspnea is a "shortness of breath; labored breathing. In most cases dyspnea is due to heart disease; in some instances it is caused by kidney disease or lung disease." 2 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE D-245 (2005).

7

church worship services. (Tr. at 87-88.) Plaintiff's sister reported that Plaintiff took good care of herself and that Plaintiff had no problems getting along with other people. (Tr. at 90-94.)

In early June 2000, Dr. K. Han forwarded a Psychiatric Medical Report to the Disability Determination Service. (Tr. at 177-82.) The doctor reported that he first started treating Plaintiff in late November 1999 and had last seen Plaintiff three months earlier. (Tr. at 182.) Plaintiff reported to the doctor that she got along well family and friends. The doctor reported that Plaintiff also related well with him. (Tr. at 178.) Plaintiff recounted that she enjoyed watching TV, helping her children with homework, and other activities. (Tr. at 179.) The doctor found that Plaintiff's interests were not unrealistic, grandiose or delusional. (*Id.*) Plaintiff stated that she was able to undertake light housework, prepare meals for herself and her children, drive, shop for herself and her children, and care for their home. (*Id.*) The doctor found that Plaintiff was well-oriented, that her self-esteem was "fairly good," that she had "fairly good" insight into her situation, and that her stream of mental activity was flowing and relevant. (Tr. at 180.) Plaintiffs's speech was described as normal, organized, and focused. (*Id.*) Plaintiff denied any hallucinations or delusions, or suicidal thoughts. (*Id.*) The doctor reported that Plaintiff's stress level had reduced once she was no longer forced to work under her doctor's restrictions, although the doctor felt that she continued to show some symptoms of depression. (Tr. at 181.) Subsequent progress notes rated Plaintiff's response to therapy at a near-excellent level, noted that her depressive symptoms showed "good progress" (Tr. at 210-11, 213), and found that, overall, Plaintiff's symptoms of depression were decreasing. (Tr. at 201-02.)

A vocational expert ("VE") testified at the administrative hearing. He characterized Plaintiff's prior work as unskilled and light in exertion. (Tr. at 230.) In response to a hypothetical question from the ALJ presuming the exertional limitations described by Plaintiff during her

8

testimony, and after some additional questioning, the VE identified approximately 4,500 sedentary jobs – such as cashier, information clerk and surveillance monitor – that were consistent with the ALJ's hypothetical question and which "would accommodate" person such as Plaintiff. (Tr. at 230-32.)

**E.   ALJ's Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 35.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work. (*Id.*) At step five, the ALJ denied Plaintiff benefits after applying Medical-Vocational Rule 201.18 based on Plaintiff's exertional capacity for sedentary work, age, education, and work experience. (*Id.*)

**F.   Review of ALJ's Determination**

**1.   Legal Standards**

The ALJ found that Plaintiff possessed the residual functional capacity to return to sedentary work. (Tr. at 19.) According to the Code of Federal Regulations,

> [s]edentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a). Social Security Ruling ("SSR") 83-10 further clarifies this definition:

9

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251 (S.S.A.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

In the memorandum supporting Plaintiff's motion for summary judgment, counsel for Plaintiff "agrees and stipulates to the decision of the ALJ dated July 13, 2001, with regard to residual functional capacity, education and transferability of work skills." (Dkt. 10 at 2.) Counsel's argument instead is focused on the application of the Commissioner's grid rules. Noting that Plaintiff was seven weeks short of her 50th birthday[6] when the ALJ denied benefits, counsel argues that the ALJ improperly categorized plaintiff as a "younger individual" when she should have properly been considered "closely approaching advanced age." The proper application of the Commissioner's age categories has been the subject of recent Sixth Circuit consideration:

> When determining a claimant's age under the medical-vocational guidelines for purposes of DIB [Disability Insurance Benefits] eligibility, the claimant's age on the date last insured generally governs. *Curtis v. Sec'y of Health and Human Services*, No. 88-1773, 1989 WL 83869, at *3 (6th Cir. July 28, 1989) (unpublished). The age categories are not to be mechanically applied, however, when the claimant is in a borderline situation. *See Crady v. Sec'y of Health and Human Servs.*, 835 F.2d 617, 622 (6th Cir. 1987) (holding that the ALJ could make his own determination of *Crady's* age in a borderline situation and was not bound by a medical report stating that *Crady* appeared older than his chronological age); 20 C.F.R. § 404.1563(b). A

---

[6] At 50 years of age, the Commissioner's regulations consider a claimant "closely approaching advanced age." 20 C.F.R. § 404.1563(d).

> borderline situation is present where the claimant is within a few days to a few months of reaching an older age category and where application of the older age category would result in a finding of disability. 20 C.F.R. § 404.1563(b). If both of these factors are present, the ALJ is to use a "sliding scale" approach, taking into consideration the claimant's proffer of "additional vocational adversities" that might warrant moving her to an older age category. *Application of the Medical-Vocational Guidelines in Borderline Age Situations,* Social Security Admin., Ofc. of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* (HALLEX) II-5-3-2 (2006). "The fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever [her] chronological age is close to that category." *Crady*, 835 F.2d at 622; *see also* 20 C.F.R. § 404.1563(b).

*Van Der Maas v. Commissioner*, 198 Fed. App'x 521, 527-28 (6th Cir. 2006).

Under these standards, I suggest that counsel's argument lacks merit, as I suggest that this record fails to evidence the age-related "additional vocational adversities" described by the HALLEX. At the time she filed for benefits, Plaintiff reported that she prepared meals for herself and her children, washed dishes, did the laundry, shopped regularly, visited friends, attended church and enjoyed working on puzzles. (Tr. at 85-87.) Although the medical evidence does establish impairments to Plaintiff's cardiac function (Tr. at 129, 131, 173, 174), repeated cardiac exercise stress tests were negative for exercise-induced ischemia. (Tr. at 139, 163, 171.) Nor were any of the exertional limitations listed by Dr. Mathew in his report to the Disability Determination Service inconsistent with the residual functional capacity determined by the ALJ. (Tr. at 173-76).

As to Plaintiff's alleged mental impairments, Dr. Han reported that Plaintiff undertook many activities, that her insight and self-esteem were "fairly good," that her mental activity was relevant, her speech normal, organized and focused, and that she evidenced no hallucinations, delusions or suicidal thoughts. (Tr. at 177-182.) Furthermore, subsequent medical records evidence that Plaintiff's stress level was reduced and that she showed "good progress." (Tr. at 181, 201-02, 210-11, 213). This evidence, I suggest, falls considerably short of that deemed sufficient

11

in this circuit to justify a finding of disability based upon mental impairment. *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992); *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991); *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988).

On this same basis, I further suggest that the argument made by Plaintiff's counsel that Plaintiff be given special consideration by virtue of the delay in the Appeals Council's decision caused by the loss and reconstruction of the administrative record (admittedly a matter totally outside the control of the Plaintiff) similarly fails to carry the day.

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: April 23, 2007                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James A. Brunson and on Marc W. Mulder, and on U.S. District Judge Thomas L. Ludington in the traditional manner.

Date:  April 23, 2007          By      s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder